IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LYDIA BAHI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-06-2577 |
| | § | |
| MICHAEL J. ASTRUE[1], | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER GRANTING
## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court in this social security appeal is the Defendant's Motion for Summary

Judgment (Document No. 19).  The plaintiff in this case has not submitted a Motion for Summary

Judgment.  Having considered the motions, the administrative record, and the applicable law, the

Court ORDERS, for the reasons set forth below, that Defendant's Motion for Summary Judgment

is AFFIRMED.

## I.      Introduction

Plaintiff Lydia Bahi ("Bahi") brings this action pursuant to Section 205(g) of the Social

Security Act ("Act"), 42 U.S.C. § 405 (g), seeking judicial review of an adverse final decision of the

---

[1]Michael J. Astrue became the Commissioner of Social Security on February 12, 2007. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should, therefore, be substituted for Commissioner Jo Anne B. Barnhart as the defendant in this suit. No further action need be taking to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

Commissioner of the Social Security Administration ("Commissioner") denying her application for disability insurance benefits.  Bahi alleges that the Administrative Law Judge's ("ALJ") decision is flawed because substantial evidence does not support the Secretary's findings.  The Commissioner, in contrast, contends substantial evidence in the record supports the ALJ's decision and the decision comports with applicable law.

## II.    Administrative Proceedings

On April 21, 2004, Bahi applied for disability insurance benefits, claiming an inability to work since October 15, 2003, as a result of depression and carpal tunnel.  (Tr. 27, 30).  The Social Security Administration denied her application at the initial and reconsideration stages.  (Tr. 66-69, 331-37).  Bahi then requested a hearing before an ALJ.  (Tr. 71-74).  The Social Security Administration granted her request and the ALJ, Earl W. Crump, held a hearing on February 23, 2006.  (Tr. 27).  On March 27, 2006, the ALJ issued a decision finding Bahi not disabled.  (Tr. 14).

Bahi sought review of the ALJ's adverse decision with the Appeals Council.  (Tr. 9).  The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or conclusions; or (4) a broad policy issue may affect the public interest.  20 C.F.R. § 404.970; 20 C.F.R. § 416.1470.  Bahi filed a request for review with the Appeals Council on April 26, 2007.  (Tr. 9).  The Appeals Council denied Bahi's request for review on June 10, 2006, and the ALJ's March 27, 2006, decision became final. (Tr. 6).

Subsequently, Bahi requested an extension to file civil suit against the Commissioner.  (Tr.

5).  The Social Security Administration granted Bahi's request to extend the deadline to file suit.  (Tr. 4).  After filing suit, Bahi and the Commissioner each requested additional time to file motions for summary judgement.  (Document No. 14, 15).  The Court granted both motions.  (Document No. 16, 17).  The Commissioner filed a timely Motion for Summary Judgment.  (Document No. 19).  Bahi did not.  This appeal is now ripe for ruling.


III.    Standard of Review of Agency Decision

The Court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999).  Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the case for a rehearing."  42 U.S.C. § 405(g).  While the court must examine the entire record to decide if the record supports the decision, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985).  Only the Commissioner may resolve conflicts in the evidence.  *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

3

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co., v. N.L.R.B.*, 305 U.S. 197, 229 (1938)).  Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala*, 1 F.3d 357, 360 (5th Cir. 1993).  The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).


## IV.    Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability.  *Johnson*, 864 F.2d at 344.  The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques.  42 U.S.C. § 423(d)(3).  The impairment must severely limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age,
> education, and work experience, engage in any other kind of substantial gainful work
> which exists in the national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy exists for him,
> or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A).  The mere presence of an impairment does not establish that one is

suffering from a disability. Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen*, 782 F.2d 1284, 1286 (5th Cir. 1986)).

The Commissioner applies a five-step sequential process to decide disability status:

1. If the claimant is presently working, a finding of "not disabled" must be made;

2. If the claimant does not have a "severe impairment" or combination of impairments, [he] will not be found disabled;

3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;

4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and

5. If the claimant's impairment prevents him from doing any other substantial gainful activity, taking into consideration his age, education, past work experience and residual functional capacity, he will be found disabled.

*Anthony*, 954 F.2d at 293; *see also Legget v. Chater*, 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan*, 925 F.2d 123, 125 (5th Cir. 1991). Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists. *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work. *Id.* Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding. *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990). If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends. *Legget*, 67 F.3d at 564.

The ALJ, in Bahi's case, found Bahi not disabled at step four. In particular, the ALJ

5

determined that Bahi did not presently work (step one); that Bahi's depression, HIV, and carpal tunnel syndrome were severe impairments (step two); that these conditions, when considered both singly and in combination, did not meet or equal an impairment listed in Appendix 1 of the regulations (step three); that Bahi's impairments did not preclude her from doing her past work (step four); and, alternatively, that Bahi's impairments did not prevent her from doing any other substantial gainful activity, taking into consideration her age, education, past work experience and RFC (step five). In this appeal, the Court must determine: (1) whether substantial evidence supports the step four finding, (2) whether the ALJ used the correct legal standards in arriving at that conclusion, including, whether the ALJ properly considered the opinions of the vocational expert, in light of Bahi's limitations, and (3) whether the ALJ's properly assessed Bahi's credibility.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history, and present age. *Wren*, 925 F.2d at 126.

## V.    Discussion

### A. Objective Medical Facts

The objective medical evidence shows Bahi suffers from depression, HIV, and carpel tunnel syndrome. Bahi developed symptoms of depression after learning she was HIV positive in 1997. (Tr. 165). Bahi has taken a number of medications to combat depression. (Tr. 111, 122, 130, 149, 163, 165). Additionally, Bahi has undergone surgery to alleviate some symptoms associated with

carpel tunnel syndrome.  (Tr. 146, 238, 286, 312).

Physicians diagnosed Bahi with HIV in December 1997. (Tr. 165).  Although Bahi is HIV positive, Bahi has never taken medication for HIV because she remains asymptomatic.  (Tr. 245, 253).  Physicians have monitored Bahi's HIV; however, she only receives treatment for depression thus far. (Tr. 164-30).

For Bahi's depression, physicians recommended counseling  sometime in 2000, but, she did not seek help until December 2003.  (Tr. 183, 259).  While Bahi alleges she has been disabled since October 15, 2003, as a result of depression and carpal tunnel, she did not mention she was depression in an October 28, 2003, hospital visit.  (Tr. 258-63).  She first mentioned depression on December 17, 2003, and was started on an anti-depressant regiment.  (Tr. 252).  When interviewed about her depression by doctors, from 2003 to 2005, Bahi frequently describes how she is doing as 'ok.'  (Tr. 215, 217, 218, 222, 241, 250, 252, 303, 305).  On March 15, 2004, her doctor described her depression as 'mild.'  (Tr. 241).  In August 2004, Bahi relapsed into a deeper depression.  (Tr. 222).  In response, she was referred for therapy, and her dosage of antidepressants was increased.  (Tr. 222).  Bahi responded favorably, and two months later on October 25, 2004, her physician described Bahi's depression as "stable and well contained."  (Tr. 218).  Since the August 2004 episode of depression, Bahi has not reported any major relapses, and physicians have all characterized her depression as mild.  (Tr. 215, 217, 218, 303, 305).  At her last office visit on February 1, 2006, Bahi, told the psychiatrist she felt more focused, had increased motivation, and overall felt the antidepressant helped.  (Tr. 275).

The medical records further show that Bahi occasionally reported thoughts of suicide and some auditory hallucinations, but also denied any plans to act on these thoughts or homicidal

ideation. (Tr. 167). For instance, on January 14, 2004, the psychiatrist described Bahi's depression as mostly stable not suicidal or schizophrenic, and noted that she was even laughing enthusiastically. (Tr. 250). Bahi first reported hearing voices on April 8, 2004. (Tr. 238). According to Bahi, the voices cursed at her. (Tr. 238). During the episode of major depression in August 2004, Bahi still had voices in her head, this time telling her to commit suicide. (Tr. 222). However, she told the doctor, "she would never do it." (Tr. 222). Also in August 2004, Bahi saw a psychologist, who noted that while Bahi suffered from depression and auditory hallucinations, she was able to manage her funds and shop for herself. (Tr. 164). In September 2004, Bahi felt more depressed and paranoid, but still not suicidal. (Tr. 220). In psychiatric visits in January, February, March, and November of 2005, psychiatrists noted the absence of suicidal thoughts and schizophrenia. (Tr. 215, 280, 306, 309). Even in November 2005, when Bahi reported feeling more hopeless and depressed, she did not mention any voices or suicidal thoughts. (Tr. 280). Bahi did not mention voices or suicidal thoughts again till February of 2006. (Tr. 275). Similar to before, Bahi heard voices telling her, "You are going to die." (Tr. 275).

Bahi has also reported trouble sleeping and a lack of concentration. Physicians regularly prescribed Bahi sleep aids, such as Ambien or Trazodone to alleviate Bahi's trouble sleeping. (Tr. 162, 163). Since then, Bahi reports the drugs have alleviated her problem. (Tr. 250). Bahi first reported a lack of concentration in August 2004 and now frequently complains about an inability to concentrate. (Tr. 18, 220, 221).

On August 25, 2004, Dr. J.L. Paterson conducted a psychiatric evaluation of Bahi. (Tr. 164). While the psychiatrist noted that thoughts included auditory hallucinations and suicidal thoughts, he also noted Bahi's  social withdrawal seemed compulsive, and opined that Bahi possessed a fairly

8

logical and coherent thought process.  (Tr. 166, 167).  In regards to memory functioning, the psychiatrist reported Bahi's memory as mildly deficient.  (Tr. 267).  Additionally, the doctor noted Bahi is below average in concentration, and "low average" on intellectual functioning.  (Tr. 167).  Overall, Dr. Paterson classified Bahi's psychological stress level as severe.  (Tr. 168).

During the hearing, Patricia Cowen ("Cowen"), a vocational expert, testified based on her examination of the record concerning her age, education, and vocational background.  (Tr. 45).  Cowen summarized her findings, describing Bahi as a 50 year old woman, approaching advanced age.  (Tr. 46).  Also, Bahi has a GED plus some education.  (Tr. 46).  Additionally, she described Bahi's past vocations as light or sedentary and mostly semi-skilled.  (Tr. 46).  Cowen further found that a person limited from highly skilled and detailed work, requiring sustained concentration, attention, and persistence could still find work.  (Tr. 48).  She further stated that there is a full range of light, unskilled work activities available to Bahi.  (Tr. 48).

**B. Diagnosis and Expert Opinion**

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact.  Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker*, 653 F.2d 997, 1001 (5th Cir. 1981).  For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings.  *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981).  Further, regardless of the opinions and diagnoses and medical sources, "'the ALJ has sole responsibility for determining a claimant's disability status.'"  *Martinez v. Chater*,

9

64 F.3d 172, 176 (5th Cir. 1995).

The main healthcare providers of Bahi are the treating physicians at Thomas Street Clinic and Dr. Paterson, the psychiatrist.  Additionally, Bahi has also sought medical treatments from the Harris County Hospital District in the past.  The ALJ considered the collective opinions of the all the medical experts in examining Bahi's condition.  Despite Bahi's objections, there is substantial evidence for the ALJ's adaptation of the medical notes over the plaintiff's claims.  (Document No. 1-2).  Every treating physician and Dr. Paterson diagnosed Bahi with depression; however, none of them restricted her from any work activity.  (Tr. 111, 122, 130, 149, 163, 165, 182, 188).  Neither Bahi nor the ALJ dispute any of the conclusions made by any of the treating physicians on record or Dr. Paterson.  (Tr. 21-23).

However, in scrutinizing the ALJ's decision, each of Bahi's complaints are weighted against the clinical and laboratory findings.  First, Bahi's complaints of depression are largely undisputed by the ALJ or the record.  Ample evidence within the medical files support Bahi's claims of depression.  (Tr. 111, 122, 130, 149, 163, 165).  Bahi, however, claims 'severe' depression and trouble accomplishing household work.  (Tr. 71, 123, 142, 150).  In her hearing, she also claims to have attempted suicide in December 2004, and stated that she hears voices on a regular basis.  (Tr. 39).

However, Bahi's treating physicians, several times within her history, characterize her depression as mild and stable.  (Tr. 218, 241, 303).  Bahi has never been hospitalized for depression.  (Tr. 39).  On occasion, her treating physicians described Bahi as doing well, better, or well overall.  (Tr. 217, 218, 280).  In fact a little over two weeks before her hearing, at a visit to the Thomas Street Clinic, Bahi only complained about her hand, characterizing her depression as stable.  (Tr. 309).  She

10

reported no suicidal thoughts, and no crying spells.  (Tr. 309).  Additionally, throughout Bahi's medical records, no physician mentioned a suicide attempt.  Also, psychiatric visits around the time of the alleged suicide attempt (November 2004 and January 2005) describe Bahi as depressed, but not suicidal and free of schizophrenia.  (Tr. 215, 217).  Beyond claims made for social security benefits, the clinical records do not support Bahi's claims.  The clinical findings show more than a conclusory opinion, thus the ALJ must show deference to the treating medical expert's findings.

Bahi also claims carpal tunnel syndrome limits her ability to work.  (Tr. 146)  Bahi underwent carpel tunnel release surgery to alleviate the symptoms in November 2005.  (Tr. 200, 279).  After the surgery, records indicate Bahi was 'doing well.'  (Tr. 299).  However, Bahi testified she did not think the surgery helped at all.  (Tr. 38).  Nowhere else in her medical records after the surgery does Bahi reference continuing pain from carpal tunnel syndrome.  Because Bahi's medical records and claims do not align, the ALJ would only consider claims consistent with her medical records.

At the hearing, Bahi claimed symptoms of HIV left her with no energy.  (Tr. 37).  However, her medical records strongly indicate she clearly does not suffer from any HIV symptoms.  (Tr. 222, 223, 245, 253).  The ALJ also noted that Bahi's CD4 count has never significantly decreased.  (Tr. 18).   The ALJ also observed Bahi's global assessment of functioning (GAF) scores, 65 in August 2004 and 55-60 in August 2005.  (Tr. 18).  Her scores only indicate a moderate social, occupational, or school function impairment.  (Tr. 18).

Next, the ALJ accessed Bahi's daily living activities, which includes adaptive functioning.  (Tr. 18).  Adaptive functioning includes household activities such as cleaning, cooking, paying bills, hygiene, and using the post office.  (Tr. 18).  Bahi regularly does her own housework, manages her own finances, and uses public transportation.  (Tr. 36, 114, 182).  The ALJ correctly adopted

evidence supporting the conclusion that her mental impairments do not seem to restrict Bahi's daily functioning.

The ALJ next considered Bahi's social functioning and her ability to interact with others. (Tr. 19). According to her GAF scores, Bahi is only moderately impaired in this area. (Tr. 18). In the disability documents filed, Bahi claims depression leaves her unable to socialize or interact with others. (Tr. 36, 114, 142). However in her case assessment report, the therapist described her social life as 'unremarkable,' and that she was 'active in church.' (Tr. 198, 209). Additionally, when asked what she does with friends, Bahi listed church activities. (Tr. 213). Another evaluation by Dr. Paterson noted her social withdrawal seemed compulsive. (Tr. 167).

Third, the ALJ considered the plaintiff's concentration, persistence, or pace of sustained focus to complete common work tasks. (Tr. 19). Bahi reported that she cared for her personal needs, residence, and finances. (Tr. 165). Additionally, a mental residual functional capacity assessment determined that Bahi could 'understand, remember, and carry out detailed...instructions.' (Tr. 186). Bahi could also concentrate for extended periods and respond appropriately to changes in routine work settings. (Tr. 186).

The last area the ALJ considered was the area of "decompensation." (Tr. 19). Decompensation refers to episodes of increased symptoms accompanied by the loss of adaptive functioning. (Tr. 19). The criteria for repeated episodes of decompensation requires an average of one episode every 4 months, lasting 2 weeks long. (Tr. 19). None of the evidence presented meets this criteria.

Also, the objective findings do not support Bahi's testimony that she could only stand for one hour and walk one block. (Tr. 19). Both her work history and residual functional physical capacity

assessment directly contradict her claims. (Tr. 134, 188).  At best, the residual functional assessment recommended the plaintiff sit for about 6 hours per workday.  (Tr. 189).

### C. Subjective Evidence of Pain

The third element considered is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends.  Not all pain is disabling, and even if a claimant cannot work without some pain or discomfort, it will not render her disabled. *Cook*, 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423.  The statute provides that allegations of pain do not constitute conclusive evidence of disability.  Objective medical evidence must show the existence of a physical or mental impairment which could reasonably be expected to cause the pain.  Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence of the record. 42 U.S.C. § 423.  "Pain constitutes a disabling condition under the SSA only when it is 'constant, unremitting, and wholly unresponsive to therapeutic treatment,'" *Sellers*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)).  Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v Shalala*, 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential.  The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames*, 707 F.2d at 166.

Bahi's testimony before the ALJ included very few references to pain.  Bahi mainly testified to  emotional pain.  In terms of physical pain, Bahi referenced pain in her hand from carpel tunnel syndrome (Tr. 38).  She claimed the carpel tunnel release surgery did not help the pain in her right

13

hand; however, her medical records are wholly unsupportive of her claims. (Tr. 38, 299). The ALJ found Bahi's claimed limiting effect not entirely credible. (Tr. 17).

In terms of Bahi's emotional pain from depression, to constitute a disabling condition, her pain must be wholly unresponsive to treatment. All of Bahi's medical records show the anti-depressant medication assuaged her symptoms to a mild depression. (Tr. 217, 218, 280). Credibility determinations, such as that made by the ALJ in this case in connection with Bahi's subjective complaints of pain, are generally within the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert denied*, 514 U.S. 1120 (1995). The ALJ made and supported his credibility determination, and did not rely on any inappropriate factors in making his credibility determination.

### D. Education, Work History, and Age

The fourth element considered is the claimant's educational background, work history and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

As of the date of the last administrative hearing, Bahi was 50 years old, had a GED education, and some training as a medical assistant. (Tr. 31). Based on his determination of Bahi's residual functional capacity, the ALJ posed three hypotheticals to a vocational expert ("VE") about Bahi's ability to engage in her past work and other work:

ALJ: Let me ask you to assume an individual limited to exertionally to the performance of no more than light work, as defined by the Department of Labor, and reflected in the Social Security Administrations regulations. Assume further that I would find that this person would be precluded from performing work that would require sustained, concentration, and attention, and persistence, and pace for prolonged periods, and would be limited to no more than occasional interaction with the general public. Assuming those limitations, but no others, could a person so limited perform any of Ms. Bahi's past relevant work, either as actually performed, or as normally performed in the national and local economies?

VE: Prior work that's compatible with that would be file clerk. I don't know whether she interacted frequently as a receptionist with the public, or whether it was occasional, but often [a] receptionist is an occasional interaction, and that would be compatible with your hypothetical.

ALJ: Continuing...to assume those limitations, but no others, do you know of other work in the national, or local economies that could be performed by someone of Ms. Bahi's age, education, and vocational background who was so limited?

VE: Well certainly we have a full range of light, unskilled work activities with little exception. In terms of transferability of skills, I think that would exist in this case, and I think there are some–and they have to do with basically the transference of clerical skills. Some examples of jobs in that category would be, for example, information clerk, or a telephone solicitor. A lost and found clerk.

ALJ: All right. For purposes of the second hypothetical question, let me ask you to keep in mind all of the restrictions contained in my previous question. Assume further that I would find that this person would be precluded from performing work that would require constant handling, and fingering with the right hand. Assuming those limitations then, but no others, could a person so limited perform Ms. Bahi's past relevant work, either as performed, or normally performed.

VE: I think the jobs that I recognized in hypothetical one are compatible with that.

ALJ: For purposes of the third hypothetical question then, let me ask you to assume an individual limited exertionally to the performance of no more than sedentary work, as defined by the Department of Labor, and reflected in the Social security Administrations regulations. Again, assume that I would find that this person would be precluded from performing highly detailed work, would be precluded from performing work that would require sustained concentration, and attention, and persistence, and pace for prolonged periods, and would be limited to no more than occasional interaction with the general public, and would be precluded from performing work that would require constant handling, and fingering with the right

hand.  Assuming all of those limitations, but no others, do you know of work in the national, or local economies that could be performed by someone of Ms. Bahi's age, education, and vocational background who was so limited?

VE: Yes, sir, the receptionist job that she performed prior, along with order clerk, and checker.

(Tr. 47-50).  Bahi's attorney then questioned the vocational expert on the degree of concentration needed to carry out the vocations she suggested.  (Tr. 51).  The vocational expert explained the jobs she listed may require moments of attention or concentration, however, limited the period to about 10 percent.  (Tr. 51-52).  However, since the ALJ properly found the plaintiff's residual functional capacity did not preclude her from some past relevant work, the ALJ did not erroneously rely on the vocational expert's testimony the plaintiff's limitations did not preclude her from some work activity.  The ALJ properly considered Bahi's education, age, and work history in determining what other jobs in the national economy Bahi could perform.

**VI.     Conclusion and Order**

Considering the record as a whole, it is the opinion of this court that the ALJ properly used the guidelines propounded by the Social Security Administration, which directs a finding of "not disabled" on these facts.  *See Rivers v. Schweiker*, 684 F.2d 1144 (5th Cir. 1982).  As all the relevant factors weigh in support of the ALJ's decision, and as the ALJ used the correct legal standards, the Court ORDERS that the Commissioner's Motion for Summary Judgement (Documents No. 19) is GRANTED and the Commissioner's decision is AFFIRMED.

Signed at Houston, Texas, this 23[th]  day of  July , 2007.


Frances H. Stacy
United States Magistrate Judge